## In re JAMAICA SLATE ROOFING & SUPPLY CO.

### (District Court, E. D. New York. February 7, 1913.)

1. **BANKRUPTCY (§ 136*)—CONCEALMENT OF ASSETS—CONTEMPT PROCEEDINGS.**

   Where, in proceedings against two of the individual owners of a bankrupt corporation for contempt for failure to account for the proceeds of a note, it appeared that defendant K. took up the note and relieved his codefendant from payment therefor, K. having furnished evidence of the existence and whereabouts of the note, the contempt proceeding against H. should be dismissed, since, if any claim vested in the trustee as against H., it could be disposed of in a separate action against him, as no punishment for contempt in failing to turn over the note could be inflicted.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233–235; Dec. Dig. § 136.*]

2. **BANKRUPTCY (§ 136*)—CORPORATIONS—DIRECTORS—WITHHELD ASSETS.**

   Where certain directors of a bankrupt corporation were ordered to return $822.94 alleged to have been wrongfully received by them from the corporation, they were not entitled to set off against such amount and claim of another corporation controlled by them, against the trustee.

   [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 233, 235; Dec. Dig. § 136.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Jamaica Slate Roofing & Supply Company. Proceeding to punish W. B. Hambright and Joseph Kellow for misappropriation of the bankrupt's funds. Dismissed as to defendant Hambright, and Kellow and wife adjudged in contempt in failing to turn over or account for certain funds.

See, also, 200 Fed. 460.

---

M. S. Schoenbaum, of Jamaica, N. Y., for trustee.

Robert McC. Robinson, of New York City, for Joseph Kellow and Elizabeth P. Kellow.

CHATFIELD, District Judge.   The two individual owners of the bankrupt corporation have been ordered to pay or account for $822.94, which it is admitted they received from a sale of part of the assets of the bankrupt prior to the filing of the petition.   As to this sum, Joseph Kellow now asserts that he personally received the entire amount, and offers vouchers, receipts, and pay roll accounts for the month of November, 1911, totaling $1,374.49.   He makes affidavit that these moneys were paid out by him for bills and labor for the bankrupt during that month, and that he has neither concealed nor retained any of the sum.

He claims that the Jamaica Slate Roofing & Supply Company had on hand, on November 1, $101.11; that it received on November 3d, in cash, $222.94, making a total of $324.05, from which it expended, upon the 4th of November, $122.64, and upon the 9th and 11th of November, $161.90; that the bankrupt received, upon the 14th of November, from W. B. Hambright, $450, and expended upon the 17th, for slate and traveling expenses, $430.50, and upon the 18th, for wages, $192.25; that it also received, on the 17th of November, $495 (as proceeds of a note for $500 given by Hambright), and expended, from the 20th of November to the 29th, the sum of $367.20. According to these figures, the total amount received in November was $1,419.05, and the total paid out, $1,374.49, leaving a balance in bank and in cash of $44.56.

The trustee attacks this account by pointing out that Hambright has testified that the $822.94, paid by him, was paid upon the 20th of November.   It further appears that $367.20 of the payments shown by Kellow were subsequent to that date.·  The trustee also points out that a number of the charges were against Joseph Kellow personally, and that one item, for $110.80, purports to have been paid by a man named Carman.   Inasmuch, however, as this item, which was paid upon the 27th day of November, is only credited by Kellow for the sum of $10.80, it is evident that he may have contributed that much, or it may indicate the total unreliability of the account submitted.

[1] It is evident that, if the $500 note was discounted by Tony Weiss for $495, upon November 17th, and that $430.50 was used upon that day, while upon the following day $192.25 wages were paid, then the proceeds of this note were used in the business.   And if Joseph Kellow thereafter took up the note and relieved Hambright from payment therefor, the situation is as the court previously outlined the matter, viz., that the Kellows have furnished evidence of the existence and whereabouts of the note, and, if any claim vests in the trustee as against Hambright, that can be disposed of in a separate action against him, and no punishment for contempt in failing to turn over this note can be inflicted.

As to the item of $822.94, which the Kellows were ordered to pay back because of their use of the property of the bankrupt in acquiring stock in the new corporation valued by them at that amount, the rec-

ords show repayment by the Kellows of $597.94; they having deducted $225, received by the trustee upon what is known as the Whiton contract. They allege that the new corporation, the Jamaica Slate, Slag & Metal Roofing Company, finished this contract, which has been assigned to Hambright for that purpose, at a greater cost than the contract price and that therefore the net amount realized should be credited to the Kellows.

[2] This argument is fallacious, in that the Kellows are bound to repay this amount of money, viz., the $225, individually, and if the Jamaica Slate, Slag & Metal Roofing Company as a corporation is entitled to recover from the trustee in bankruptcy, the right thereto must be shown by proper corporate action, and the Kellows, as individuals, cannot take advantage without assignment to themselves and without any proof whatever except a mere statement of the alleged fact of some balance due another person, i. e., the corporation doing the work.

The difficulties in this case have to a large extent been caused by the action of the Kellows, showing entire obliviousness to their proper conduct as stockholders or officers in a corporation.

Upon the present motion, therefore, Joseph Kellow and Elizabeth Kellow should be adjudged in contempt in failing to turn over or properly account for the sum of $225 and the further sum of $455.74, and should be freed from punishment for contempt in failing to turn over the $500 note.